IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY ARMSTRONG, | : | |
|    Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 20-CV-5012 |
| SUPERINTENDENT | : | |
| SCI-CAMP HILL, *et al.*, | : | |
|    Respondents. | : | |

**MEMORANDUM**

Marston, J.                                                                                               August 14, 2023

      Pro se Petitioner Anthony Armstrong is a state prisoner currently serving a 22.5- to 45-year term of incarceration. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming trial court error and ineffective assistance of counsel. (Doc. Nos. 1, 15.) On March 17, 2023, the Honorable Carol Sandra Moore Wells, United State Magistrate Judge, issued a Report and Recommendation ("R&R") which recommends dismissal of Armstrong's petition. (*See* Doc. No. 26.) Armstrong submitted a one sentence "objection" to the R&R. (Doc. No. 27.)[1] After reviewing the parties' submissions, the state court record, and Judge Wells's R&R, the Court agrees with Judge Wells's findings and conclusions and adopts the R&R in its entirety. We write separately to briefly address one issue not discussed in the R&R.

---

[1] Armstrong's objection does not comply with this Court's Local Rule 72.1.IV(b), which states a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." E.D. Pa. L.R. 72.IV(b); *see also Piasecki v. Ct. of Common Pleas*, No. 14-cv-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021); *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Nevertheless, the Third Circuit has counseled that "[e]ven absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017); *see also Mathews v. Weber*, 423 U.S. 261, 271 (1976) ("[T]he authority and responsibility to make an informed final determination remains with the [district court] judge.").

I.

Armstrong argued before the trial court, on direct appeal, and during PCRA proceedings that the Commonwealth violated his right to a speedy trial under Pennsylvania Rule of Criminal Procedure 600. (*See* Doc. No. 35 at 48 (motion to dismiss under Rule 600); *id.* at 64 (statement of errors complained of on initial appeal); Doc. No. 35-1 at 202–03 (pro se PCRA petition); *id.* at 211–21 (supplemental, counseled PCRA petition); *id.* at 271–75 (letter brief to initial PCRA court); Doc. No. 35 at 254 (statement of errors complained of on PCRA appeal).) The Pennsylvania courts rejected that argument at each level. (*See* Doc. No. 35 at 75 (trial court denial); *id.* at 98 (denial on initial appeal); Doc. No. 35-2 at 1–17 (denial by initial PCRA court); Doc. No. 35-1 at 531–36 (denial on PCRA appeal).) As Judge Wells explains in her R&R (Doc. No. 26 at 4), a federal habeas court cannot reconsider state court decisions on matters of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

That said, in addition to his Rule 600 claim, Armstrong also argued in his PCRA petition that his Sixth Amendment right to a speedy trial under the federal constitution was violated by the delay between the filing of his criminal complaints and his trial. (*See* Doc. No. 35-1 at 211 ("In the instant matter, Armstrong alleges a constitutional violation of the 6th Amendment to the U.S. Constitution . . . .").) In its opposition brief before this Court, the Commonwealth concedes that Armstrong has exhausted this federal claim,[2] and that liberally construed, his habeas petition

---

[2] Despite the Commonwealth's concession, it is unclear to the Court whether Armstrong did, in fact, exhaust his Sixth Amendment claim. Although he raised the issue in his initial PCRA petition, it appears that he failed to raise the issue on appeal to the Pennsylvania Superior Court. Instead, his Statement of Errors Complained of on Appeal suggests that the appeal focused entirely on Armstrong's

2

could be viewed as raising a Sixth Amendment claim.  (*See* Doc. No. 20 at 8 & n.5.)  The Court agrees, and because Judge Wells did not reach the Sixth Amendment issue, we briefly address it here.

As mentioned, Armstrong raised his federal speedy trial claim before the trial court during PCRA proceedings.  Although the state court did not discuss the federal claim in its opinion, this Court nevertheless presumes that the claim was considered and denied on the merits.[3]  *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) ("[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits.  We see no reason why this same rule should not apply when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding.").  Accordingly, the state court's rejection of Armstrong's federal claim is entitled to

---

Rule 600 and ineffective assistance of counsel claims.  (*See* Doc. No. 35-1 at 309–11.)  *See Drew v. Wertzel*, Civil Action No. 15-2725, 2016 WL 8731449, at *5 (E.D. Pa. July 26, 2016) ("Although Drew made a cursory mention of the Sixth Amendment in his initial PCRA petition, he did not raise a Sixth Amendment claim in his PCRA appeal to the Superior Court.  Nor did Drew raise a Sixth Amendment speedy trial issue in his direct appeal.  Having failed to pursue the Sixth Amendment claim on direct appeal or PCRA appeal, the claim here is procedurally defaulted.").  The Court need not consider the issue further, however, because the Commonwealth's concession in its brief before this Court serves as an express waiver of the exhaustion requirement, allowing the Court to reach the merits of the Sixth Amendment claim.  *See Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 380–82 (3d Cir. 2022) (finding the Commonwealth conceded exhaustion of the petitioner's Sixth Amendment claim and therefore, "obviate[d] the need for [the court] to address the issue further"); *Sharrieff v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009) ("Here, the State conceded exhaustion before the District Court by stating in its answer to Sharrieff's habeas petition that it 'appears that Sharrieff has exhausted his state court remedy as to the *Blakely* issue, since he presented it to the state's highest court in his petition for certification.'  The fact that the State based its concession on a flawed legal conclusion is of no consequence; its concession clearly, explicitly, and unambiguously relinquished and abandoned its right to assert the nonexhaustion defense.  That is enough to expressly waive the exhaustion requirement under Section 2254(b)(3).").

[3] As the quote from *Johnson* suggests, this presumption may be rebutted "either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*) or by the State (for the purpose of showing that the claim should be regarded as procedurally defaulted." *Johnson*, 568 U.S. at 301–02.  In this case, however, neither party has done so.

deference under the standard outlined in § 2254(d).  *See Eichwedel v. Chandler*, 696 F.3d 660, 671–73 (7th Cir. 2012) ("Despite Mr. Eichwedel's failure to perfect his appeal in state court, we have before us a merits determination from the state trial court for purposes of AEDPA. . . . Because the state appellate court did not hear the case at all . . . the state trial court's opinion retains its claim-preclusive effect and is therefore entitled to deference under § 2254(d)."). Under § 2254(d), a federal court may grant a writ of habeas corpus in connection with a "claim that was adjudicated on the merits in State court proceedings" only if:  (1) the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

"The clearly established federal law relevant" to the issue in this case "is the portion of the Sixth Amendment that states '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,' and the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972), interpreting this provision." *Conroy v. Leone*, 316 F. App'x 140, 143 (3d Cir. 2009) (quoting U.S. Const. amend. VI)).  To determine whether an accused's Sixth Amendment speedy trial rights have been violated, the court must first consider the "length of delay" to determine whether further analysis is needed.  *Id.*  "If the delay is long enough," then the delay is "analyzed as one factor among several," with the court balancing the "'length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Id.* (quoting *Barker*, 407 U.S. at 530); *see also Kennedy*, 50 F.4th at 382 (explaining that "[a]ll factors must be considered and weighed as no one factor is dispositive or talismanic" (quotation marks omitted)).

4

*Length of Delay*

As mentioned, review of the first factor, the length of delay, "entails two inquiries." *Kennedy*, 50 F.4th at 382.  First, "'to trigger a speedy trial analysis," under the full *Barker* balancing test, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'"  *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992))).  Ordinarily, a delay of 14 months is sufficient to trigger additional analysis.  *See Hakeem v. Beyer*, 990 F.2d 750,760 (3d Cir. 1993) ("[T]hough rigid time limitations have been rejected in analyzing the constitutional right to a speedy trial, we agree with the district court that a fourteen and on-half month detention before trial merits further inquiry.").  Here, approximately 35 months passed between the filing of the criminal complaint and the first day of trial in docket number CP-51-CR-0009692-2009 (the "initial case"); approximately 33 months passed in docket number CP-51-CR-0006396-2009 (the "consolidated matter").[4]  Accordingly, the first *Barker* factor weighs in Armstrong's favor, and the Court must balance it against the remaining *Barker* factors to determine whether Armstrong's Sixth Amendment rights were violated.  *See United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) ("In the present case, both parties concede that review of the remaining factors is necessary because the period of time between Claxton's indictment and trial [22 months] sufficiently exceeds the fourteen-month threshold recognized in *Hakeem*.  This factor will therefore weigh in Claxton's favor."); *see also Kennedy*, 50 F.4th at 382 ("[W]e have no difficulty concluding that the delay in this case—1,520 days, or nearly fifty months, from Kennedy's arrest on August 17, 2009, to the commencement of jury selection on October 15, 2013—was sufficiently long to trigger a *Barker* analysis.").

---

[4] "[D]elay is measured from the date of formal accusation, *i.e.*, from the earliest date of arrest or indictment until the commencement of trial."  *Hakeem*, 990 F.2d at 760.

*Reason for the Delay*

The second *Barker* factor looks to the reason for the delay and "whether the government or the criminal defendant is more to blame for that delay." *Kennedy*, 50 F.4th at 382 (quoting *Doggett*, 505 U.S. at 651). The Third Circuit has outlined "three categories of delay and the weight each category carries against the government":

> (1) A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government; (2) a more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily; and (3) a valid reason, such as a missing witness should serve to justify appropriate delay.

*Id.* at 383 (quotation marks omitted); *accord Claxton*, 766 F.3d at 295. That said, any delay caused by the defense, including delay caused by defense counsel, weighs against the defendant. *Kennedy*, 50 F.4th at 382.

Here, although the state courts, the Commonwealth, and Armstrong all appear to agree that the total delay is approximately 35 months in the initial case and 33 months in the consolidated action, the record is extremely confused about the reason for the delay in each case. (*Compare* Doc. No. 35 at 74– (trial court finding that 223 days of delay were attributable to the Commonwealth and noting that at least 243 days were attributable to the court, and between 329 and 491 days were attributable to the defendant), *with id.* at 98 (Superior Court concluding on direct appeal that Armstrong was responsible for 435 days of delay and the trial court was responsible for 251 days of delay), *and* Doc. No. 35-2 at 9–12 (PCRA court's lengthy analysis of the record and the reasons attributable to each period of delay; the court notes "the lack of specificity" in prior time calculations performed by trial court and the superior court on direct appeal, and it concludes that it has at least "two potential time calculations" for each criminal docket); *see also* Doc. No. 20 at 12–13 (Commonwealth's opposition brief in this action which

asserts that 346 days are attributable to Armstrong).)  (*See* Doc. No. 35-2 at 9–12.)  The Court need not, however, attempt to recreate, yet again, the timeline for purposes of this analysis.

Focusing on the initial case, which stretched 1,059 days from inception to trial, the PCRA court found 233 days attributable to Armstrong.  Even assuming the remaining 826 days are entirely attributable to the Commonwealth, Armstrong has not argued, nor does the record show, that any delay is the result of a "deliberate effort by the Government to delay the trial in order to hamper the defense."  That means all 826 days are attributable to either a "more neutral reason such as negligence or overcrowded courts" or a "valid reason, such as a missing witness," and at most, the delay weighs slightly in Armstrong's favor.  *See Kennedy*, 50 F.4th at 383 (finding that the second factor weighed in the defendant's favor where only 10 months of the 50-month delay were attributable to the defendant and the remaining 40 months, which were attributable to the Commonwealth, fell "within *Barker*'s second, more neutral category of delay caused by negligence and court congestion").

***Defendant's Assertion of His Right***

For the third factor, the Court considers whether the defendant asserted his speedy trial right before trial, and if so, "'the frequency and force of such assertions.'"  *Kennedy*, 50 F.4th at 383 (quoting *Velazquez*, 749 F.3d at 182).  Here, a liberal reading of the record, shows that Armstrong asserted his speedy trial rights twice, once in connection with this pretrial detainment, and once ten days before trial.  (*See* Doc. No. 35 at 48; Doc. No. 35-4 at 45.)  First, the record shows that on August 19, 2009, Armstrong filed a pro se "Motion to Release Defendant on Nominal Bail Pursuant to Pennsylvania Rules of Criminal Procedure Rule 600(E)."  (Doc. No. 35-4 at 45.)  In that motion, Armstrong argued that he was entitled to release on "nominal bail" because the Commonwealth "failed to exercise due diligence in bringing the case to trial" in the

7

180 days specified by Rule 600(E).  (*Id.*)  It is unclear how the trial court ruled on that motion.  However, the record suggests that Armstrong was in the custody of Montgomery County at the time (*see* Doc. No. 35-3 at 52–53), that he was, at some point, released on bail (Doc. No. 35 at 362), and that this bail was revoked at the completion of trial, on December 1, 2011 (*id.*).  (*See also* Doc. No. 20 at 15 (Commonwealth asserting that "Armstrong posted bail on December 20, 2009, 11 months after he was arrested").)

After this initial motion, Armstrong did not challenge the Commonwealth's diligence again until more than two years later, when defense counsel filed a motion to dismiss ten days before trial.  This assertion, almost 3 years into the prosecution of the case and just a few days before trial, is entitled to minimal weight.  *See Hakeem*, 990 F.2d at 765 ("Where cognizable speedy trial assertions occur shortly before trial, other courts have given minimal weight to such claims.").  Moreover, the assertion was made *after* a 180-day delay necessitated by Armstrong's continuance request, suggesting Armstrong and his defense counsel were not prepared for trial until shortly before it began.  *See Hakeem*, 990 F.2d at 765–66 ("When an incarcerated individual demands a trial, he should be prepared for that trial.  Evidence to the contrary weighs against a speedy trial violation."); *cf. Barker*, 407 U.S. at 536 ("We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances [requested by the government]. . . .  But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.").

In sum, although Armstrong asserted his speedy trial rights, those assertions were few and far between, and the final period of delay before trial is attributable to Armstrong.

Accordingly, this factor weighs in the Commonwealth's favor. *See Kennedy*, 50 F.4th at 384 (finding the third factor weighed in favor of the Commonwealth because although the defendant asserted his speedy trial rights four and six months after his arrest, he did not assert the right again in the nearly 40 months after being released from pretrial detention).

***Prejudice to the Defendant***

That leaves the fourth and "most important factor," prejudice. *Hakeem*, 990 F.2d at 760. The Supreme Court recognizes three types of harm caused by unreasonable delay: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the [defendant's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quotation marks omitted). "With respect to all its various types, the burden of showing the prejudice lies with the individual claiming the violation and 'the possibility of prejudice is not sufficient to support the position that speedy trial rights are being violated.'" *Hakeem*, 990 F.3d at 760 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)) (alterations adopted).

Here, Armstrong has failed to satisfy his burden. He makes no argument as to prejudice, stating in vague and conclusory terms that the extended delay violated his constitutional rights. (*See* Doc. No. 15 at 1–2.) *See Hakeem*, 990 F.2d at 762 (refusing to find prejudice where petitioner made only "vague allegations" of prejudice); *Locke v. Dillman*, 915 F. Supp. 2d 670, (E.D. Pa. 2013) ("In his objections to Judge Wells's Report and Recommendation, Petitioner states that as a result of the Commonwealth's failure to bring him to trial in a timely manner, he was unable to secure the testimony of potentially exculpatory witnesses and good character witnesses. Petitioner does not specify who these witnesses are, why they were unavailable at the time of trial, or what they would have said if they had testified. The Court cannot find the

9

Petitioner was prejudiced based on these vague allegations.").

Moreover, the delay here—approximately 35 months in the initial case, and 33 months in the consolidated action—is not so long as to trigger a presumption of prejudice. *See Hakeem*, 990 F.2d at 763 ("[A]greeing with the district court's determination that the state record fails to establish any specific impairment of the defense, we believe that it erred in inferring or presuming prejudice from Hakeem's pre-trial incarceration and in concluding that the fourteen and one-half month period between arrest and trial prejudiced him absent other specific evidence of the delay's effect on Hakeem's ability to mount his defense."). *Contra. Kennedy*, 50 F.4th at 385 (explaining that that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial" because "[a]fter such a long delay, witnesses become harder to locate and their memories inevitably fade" (quotation marks omitted)).

The fourth and most important factor weighs strongly in the Commonwealth's favor.

\* \* \*

Having considered the four *Barker* factors, the Court cannot find that the PCRA court's denial of Armstrong's Sixth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor do we find that the court's denial "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## II.

Armstrong is not entitled to habeas relief on his Sixth Amendment speedy trial claim. The remainder of his claims are addressed by the R&R, which the Court adopts in its entirety. Armstrong's petition is denied. He is not entitled to a certificate of appealability. An appropriate order follows.